IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CHARLES R. HARRIS, ID # 1219885, )<br>Petitioner, )<br>vs. )<br>)<br>NATHANIEL QUARTERMAN, Director, )<br>Texas Department of Criminal )<br>Justice, Correctional Institutions Division, )<br>Respondent. ) | No. 3:06-CV-1184-K (BH)<br>ECF<br>Referred to U.S. Magistrate Judge |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I. BACKGROUND

**A. Nature of the Case**

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge a January 9, 2004, conviction for aggravated assault with a deadly weapon in Cause No. F03-72465-TW. Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

**B. Procedural and Factual History**

In July of 2003, the State indicted petitioner for aggravated assault with a deadly weapon. (S.H. Tr.[1] at 35). After petitioner pled not guilty to the charged offense, on December 19, 2003,

---

[1] "S.H. Tr." denotes the state habeas records attached to *Ex parte Henley*, No. 62,124-01, slip op. (Tex. Crim. App. Aug. 17, 2005).

and January 9, 2004, petitioner was tried before the court, found guilty, and sentenced to eight years. *Id.* at 36, 39.

At the guilt phase of the trial, the State called two witnesses, Lanetta Collins and Officer Carlos Cruz. Collins testified that on May 19, 2003, she and her friend, Tanesha Turner, went to a house owned by petitioner, where she bought some marijuana from petitioner's cousin, Reginald. She drove to her home and then drove back towards petitioner's house to give Reginald some cigarettes he had requested. She saw Reginald walking and stopped her car to speak to him, and he told her that petitioner was looking for her because he believed that she had stolen some cough syrup from his house. Collins denied this accusation and returned to her home. (R. II:26-32). Collins further testified that a few minutes later, petitioner, Reginald, and a third man arrived at her house. Petitioner began screaming at her about stealing his cough syrup, pushed her daughter, threatened to shoot them, and waved a gun around in the air. Collins testified that petitioner only left after he realized that Turner had called 911. (R. II:16-20). Officer Cruz, a Dallas police officer, testified that he responded to the disturbance at Collins' house on May 19, 2003, at around 9:30 p.m, and that Collins was in an excited state. Cruz testified that Collins told him that petitioner screamed and cursed at her, threatened to shoot her in the face, and pulled a gun on her. (R. II:47-50). Cruz further testified that Turner was also under the stress or excitement of a startling event, and she told him that she recognized petitioner when he was at the house, she was the one who called 911, and she saw a gun. (R. II:51-53).

Petitioner and Reginald Harvey testified for the defense at trial. Reginald testified that he was at petitioner's house on May 19, 2003, and that he sold Collins some marijuana. After she left, he noticed that some cough medicine belonging to petitioner worth about $200-250 was missing, and

2

he called petitioner to let him know that Collins must have taken it. Reginald then went searching for Collins, saw her in her car and talked to her, but she denied taking the cough syrup. Reginald then returned to the petitioner's house, where he met up with petitioner, and they went to Collins' house. Reginald acknowledged that a verbal altercation took place but denied that petitioner ever threatened Collins or anyone else. Reginald also testified that neither he nor petitioner had a gun on them when they confronted Collins; he owned a gun but had left it at petitioner's house. (R. III:5-14, 17, 23). Petitioner testified that he and Reginald owned the home from where they sold drugs, but he did not live there. On the date in question, he received a call from Reginald about the missing cough syrup, which was to be sold to customers. He returned to the house, picked up Reginald, and went to Collins' house to asked her to return his cough syrup to him. He saw no children at the house and did not shove any child. Nor did he pull a gun on anyone, have a gun on him, or threaten to shoot anyone. (R. III:29-33, 38).

Petitioner filed an appeal challenging the legal and factual sufficiency of the evidence. The Fifth District Court of Appeals affirmed petitioner's conviction in an unpublished opinion. *Harris v. State*, No. 05-04-00094-CR (Tex. App. – Dallas, April 14, 2005, no pet.). On February 17, 2006, petitioner filed a state application for writ of habeas corpus in which he raised the same issues he raises in his federal petition (S.H. Tr. at 2, 7-8, 11-12). The Court of Criminal Appeals denied petitioner's state application without written order on the findings of the trial court without an evidentiary hearing. *Ex parte Harris*, No. 64,861-01, slip op. at 1 (Tex. Crim. App. June 7, 2006).

On July 1, 2006, petitioner filed the instant petition for federal habeas relief. (*See* Pet. Writ of Habeas Corpus (Pet.) at 9); *see also Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail

3

system). Respondent filed an answer on November 6, 2006, (*see* Answer) and provided the state-court records. Petitioner filed a response to that motion on November 29, 2006. (*See* Pet. Harris' Response to Respondent's Answer [hereinafter Reply]).

## C. Substantive Issues

Petitioner asserts that: (1) there is insufficient evidence to support his conviction for aggravated assault with a deadly weapon ; (2) his right against self-incrimination was violated when his attorney questioned a defense witness about a gun; (3) his rights under the Confrontation Clause of the federal constitution were violated when a State witness gave hearsay testimony; and (4) his trial attorney provided ineffective assistance of counsel. (Pet. at 7, 10). Petitioner also requests an evidentiary hearing.

## D. Exhaustion

Respondent does not contend that petitioner failed to exhaust any of his claims at the state level.

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

4

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of petitioner's state writ constitutes an adjudication on the merits. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits). Thus, the AEDPA standards enumerated in 28 U.S.C. § 2254(d) apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to

5

a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. SUFFICIENCY OF THE EVIDENCE

In his first claim, petitioner asserts that there is no evidence or insufficient evidence to support his conviction. (Pet. at 7). A claim that "no evidence" supports a conviction is the same as a challenge to the legal sufficiency of the evidence. *See Haley v. Cockrell*, 306 F.3d 257, 266-67 (5th Cir. 2002) (noting that a claim of "no evidence" is the same as a claim of insufficiency of the evidence), *vacated on other grounds*, 541 U.S. 386 (2004); *United States v. Jackson*, 86 Fed. App'x 722, 722 (5th Cir. 2004) (per curiam) (applying insufficiency-of-the-evidence analysis to claim of "no evidence"). In particular, petitioner asserts that there is insufficient evidence that there was a weapon used and insufficient evidence that he threatened the complainant.

In *Jackson v. Virginia,* 443 U.S. 307, 320 (1979), the United States Supreme Court held that the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

6

beyond a reasonable doubt." Moreover, the trier of fact has the responsibility of weighing the evidence, resolving conflicts in testimony, and drawing reasonable inferences from basic facts to ultimate facts. *Id.* In essence, petitioner asserts that the evidence is insufficient to support his conviction because there was conflicting testimony, and the testimony given by Lanetta Collins was not credible because she is an admitted drug-user. Under the *Jackson* standard, however, the trial judge who presided over petitioner's trial had the responsibility of weighing the evidence presented and resolving conflicts in testimony. Moreover, a federal habeas court should not substitute its view of the evidence for that of the fact-finder. *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). When the evidence is viewed in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of aggravated assault with a deadly weapon based on the testimony of Lanetta Collins.

On direct appeal, after identifying the *Jackson v. Virginia* standard, the Fifth District Court of Appeals held that the evidence was legally sufficient to support petitioner's conviction. Although there was conflicting evidence, there was testimony before the trial court that petitioner threatened Collins with a gun, and the fact-finder was entitled to believe Collins' testimony over petitioner's testimony. *Harris v. State*, slip op. at 4-5. This is not an unreasonable application of the *Jackson* standard. Accordingly, petitioner's no evidence claim entitles him to no habeas relief.

### IV. PRIVILEGE AGAINST SELF-INCRIMINATION

In his second claim, petitioner asserts that his conviction was obtained in violation of his privilege against self-incrimination. Specifically, he contends that his Fifth Amendment privilege against self-incrimination was violated when his defense counsel asked defense witness Reginald Harvey about a gun located at the house owned by petitioner, knowing that the question was

7

harmful to petitioner's defense. (Pet. at 7).

The Fifth Amendment, made applicable to the states through the Fourteenth Amendment, commands that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. The basis for this constitutional principle is "the requirement that the State which proposes to convict and punish an individual produce the evidence against him by the independent labor of its officers, not by the simple, cruel expedient of forcing it from his own lips." Culombe v. Connecticut, 367 U.S. 568, 581-582 (1961).

At petitioner's trial, counsel asked Reginald on re-direct whether there was a gun in the house when Collins arrived to purchase marijuana. Reginald testified that his gun was in the house, he moved it out of the way when Collins arrived, it was common for him to have a gun at that house, and he did not take his gun to Collins' house. (R. III:24-25). On cross-examination, Reginald admitted that he kept a gun for protection at the house he and petitioner used to sell drugs, but he denied that petitioner owned a gun. (R. III:22-23).

Petitioner has failed to present evidence that his Fifth Amendment right against self-incrimination was violated. He was not made to give evidence against himself due to the questions defense counsel asked Reginald about a gun. Rather, because Reginald had already admitted to owning a gun, it appears that counsel was attempting to clarify that the gun did not belong to petitioner and that it was not taken to Collins' house. None of this testimony concerned any statements given by petitioner, and none of it supported petitioner's conviction for aggravated assault. In fact, during closing statements, the prosecutor argued that Reginald's testimony was not credible. (R. III:33). At the state habeas level, the trial court found that petitioner had not been denied any rights guaranteed to him under the federal constitution. (S.H. Tr. at 28). The Court of

8

Criminal Appeals denied petitioner's state application for writ of habeas corpus on the findings of the trial court. *See Ex parte Harris*, No. 64,861-01, slip op. at 1 (Tex. Crim. App. June 7, 2006). This is not contrary to federal law. This claim provides no basis for relief.

## V. CONFRONTATION CLAUSE

In his third claim, petitioner argues that he was denied his constitutional right to confrontation when Officer Cruz gave hearsay testimony regarding what Tanesha Turner told him she witnessed at Collins' house. In particular, petitioner contends that Officer Cruz testified that Turner told him that petitioner threatened Collins with a gun, but the defense was never given the opportunity to cross-examine Turner because she did not testify at trial.

Under the confrontation clause of the Sixth Amendment, the accused in a criminal prosecution has the right to be confronted with the witnesses against him. U.S. CONST. amend VI. However, the Confrontation Clause does not preclude the admission of *any* hearsay testimony. Instead, the Supreme Court has recently held that only testimonial statements cause the declarant to be a "witness" within the meaning of the Confrontation Clause. Thus, other non-testimonial hearsay, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause. *Davis v. Washington*, 547 U.S. 813, 821 (2006), *citing Crawford v. Washington*, 541 U.S. 36, 51 (2004). The Supreme Court in *Davis* further explained that:

> [s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis*, 547 U.S. at 822. The Supreme Court went on to hold that statements made by a person in

9

response to a 911 operator are nontestimonial in nature. *Id*. at 828. In the case at hand, Officer Cruz responded to a 911 call and took the necessary information to try and determine what had happened and locate the suspect. The purpose of Officer Cruz' testimony about what the two women told him was not to *prove* past events that would be relevant to later prosecution. Accordingly, petitioner has failed to demonstrate that the admission of this hearsay testimony violated his right of confrontation.

Moreover, even if admission of the officer's testimony was error, it is subject to a harmless error analysis on federal habeas review. Petitioner has not established that any error had a substantial and injurious effect or influence on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see Guidry v. Dretke*, 397 F.3d 306, 330-31 (5th Cir 2005) (applying *Brecht* to a *Crawford* violation). As noted earlier, the trial court had before it the first-hand testimony of Lanetta Collins that petitioner had a gun in his hand and threatened her with it. With this direct testimony in support of the verdict, it cannot be said that additional, hearsay testimony that another person saw a gun had a substantial and injurious effect or influence on the verdict. At the state habeas level, the trial court found that petitioner had not been denied any rights guaranteed to him under the federal constitution. (S.H. Tr. at 28). The Court of Criminal Appeals denied petitioner's state application for writ of habeas corpus on the findings of the trial court. *See Ex parte Harris*, No. 64,861-01, slip op. at 1 (Tex. Crim. App. June 7, 2006). This is not contrary to federal law. Petitioner's claim entitles him to no habeas relief.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

In his fourth claim, petitioner asserts that he received ineffective assistance of counsel at trial because defense counsel failed to object to Officer Cruz' hearsay testimony regarding Turner's statement and because defense counsel failed to interview and cross-examine witnesses. (Pet. at 10).

10

To successfully state a claim of ineffective assistance of counsel, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). This standard applies to challenges to a plea of true to revocation allegations. *Whitten*, 2003 WL 21509163, at *10.

To determine whether counsel's performance is constitutionally deficient courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted).

Petitioner first argues that his trial counsel was ineffective for failing to object to hearsay testimony given by Officer Cruz regarding what Turner told him when he responded to the 911 call. As noted earlier, however, the statements were non-testimonial in nature, there was no confrontation clause violation, and Collins' testimony about the gun was in the record. Petitioner has not shown a reasonable probability that had defense counsel objected, the objection would have been sustained, and he would then not have been convicted.

Petitioner next argues that his trial counsel was ineffective for failing to properly cross-examine the State's witnesses and for failing to interview his witness before the day that he testified. The record from the trial, however, reveals that defense counsel vigorously cross-examined the State's witnesses. (R. II:22-38, 42-46, 53-560). Counsel was not deficient in this regard. While petitioner faults his trial counsel because she allegedly did not interview his witness until the day he testified, Reginald's testimony supported petitioner's own testimony in all important aspects. Petitioner has therefore not shown that counsel was deficient in this respect. He has also failed to show prejudice because he has failed to show a reasonable probability that if counsel had questioned Reginald or the State's witnesses earlier or differently, he would not have been convicted.

At the state habeas level, the trial court found that petitioner was represented "by an attorney who exercised all of the skill and expertise which one could reasonably of an attorney" and that petitioner was not denied his right to effective assistance of counsel. (S.H. Tr.:28). The Court of Criminal Appeals denied petitioner's state application for writ of habeas corpus on the findings of the trial court. *See Ex parte Harris*, No. 64,861-01, slip op. at 1 (Tex. Crim. App. June 7, 2006). This is not an unreasonable application of the *Strickland* standard. For the foregoing reasons, petitioner's claim of ineffective assistance of counsel entitle him to no habeas relief.

## VII. STATE CONSIDERATION OF CLAIMS

Petitioner raised his first claim on direct appeal and his remaining federal claims in his state writ. The Fifth District Court of Appeals affirmed his conviction on appeal, and the Court of Criminal Appeals denied the state writ on the findings of the trial court, and thus petitioner's claims were adjudicated on the merits. These decisions at the state level are consistent with applicable Supreme Court precedent. The decision involved no unreasonable application of Supreme Court

precedent. The adjudication of the claims did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented to the state court. Under applicable Supreme Court standards and the AEDPA standards, petitioner is entitled to no habeas relief on the claims raised in the instant petition.

## VIII. EVIDENTIARY HEARING

Upon review of the petition and answer filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## IX. RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SIGNED** on this 6th day of October, 2008.

*Irma Carrillo Ramirez*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE